Don Quixote Hotel, Yacht and Golf Club, Inc., Hugh A. McPherson and His Wife Monica G. McPherson, Petitioners, *v.* Superior Court of Puerto Rico, San Juan Part, Alfonso García Martínez, Judge, Respondent; El Conquistador Hotel Corp., Intervener.

No. O-71-49.        Decided June 2, 1971.

*Luis A. Lugo, Jr.,* and *L. C. Delucca* for petitioners. *Dubón & Dubón* for intervener.

MR. JUSTICE RIGAU delivered the opinion of the Court.

In the year 1966, El Conquistador Hotel, while constructing a golf course, destroyed a servitude of right of way and an aqueduct servitude established on its property in favor of some parcels of land property of plaintiffs. As a consequence thereof, the water supply and the access to the residence of McPherson and his wife, which is situated on one of said parcels, were interrupted.

The aqueduct servitude, when it was destroyed by the intervener corporation, consisted of a 3,700 foot pipeline. Said pipeline was installed by plaintiffs McPherson to supply water to their home and said installation ran from the municipal road of ward Las Cabezas, in Fajardo—road which was adjacent to plaintiffs' property—up to the aforementioned residence which is situated at the top of a hill. As part of this installation plaintiffs also constructed a water tank and installed an electric pump at the foot of the hill for pumping the water to their residence.

The aforementioned servitude of right of way was established by means of deed No. 11, executed in San Juan on December 14, 1960, before Notary José M. Menéndez Monroig, the servient tenement being the intervener's property, and the dominant tenement being a six cuerda parcel of land property of McPherson and his wife, and where their house is situated.

After the aforedescribed pipeline was damaged in July 1966 by the engines utilized there by the intervener, the McPhersons repaired it in order to have a water supply for

their home, but on December 30 of that same year the pipeline was damaged again by the machines which were operated there. In its opinion and judgment of May 15, 1967, denominated Partial Judgment, the Superior Court determined that McPherson complained again to the manager of El Conquistador Hotel, on account of this second destruction of the pipeline, and intervener herein and defendant therein, El Conquistador Hotel Corporation, refused to repair the pipeline despite the fact that it had knowledge that the same was the only source of water supply to the McPhersons' residence. (Finding of Fact No. 9 of the aforementioned judgment.)

The court also determined (Finding of Fact No. 10), that "When McPherson found that his residence was deprived of a water supply he tried to get the Aqueduct to supply water to them by means of tank trucks, but the only trucks available in the area of Fajardo were being utilized by El Conquistador Hotel. On January 2, 1967, McPherson connected the water that he had accumulated in his swimming pool to the sewage system of his house to operate the same. He had to carry potable water for the basic needs of his home in large glass bottles containing mineral water which he bought in town. For washing the clothes his wife has to go to Fajardo, or to her neighbors' houses, and this situation continued until the day of the hearing when the water level in McPherson's swimming pool had reached its minimum level."

At the hearing of the case which gave rise to the aforesaid judgment, the intervener admitted the existence of the servitude of right of way in favor of plaintiffs and admitted having altered the course of the road, but denied that the same had been made more onerous. Plaintiffs controverted intervener's position with evidence, and established, to the satisfaction of the court, that the new road roughly constructed by the intervener was more onerous to plaintiffs and that it is so steep that it is dangerous when said road is wet.

As a result of the facts previously set forth, plaintiffs instituted an action for injunction, acknowledgment of servitude, and damages, against intervener herein. On March 20, 1967, the hearing was held in the Superior Court to elucidate the aspects of the injunction and the acknowledgment of the servitudes raised in the case. In the aforecited judgment of May 15, 1967, the court made clear and precise findings of fact and made the corresponding conclusions of law, favorable to plaintiffs, some of which we have already cited. As we pointed out before, the servitude of right of way had been duly established by public deed and as to the aqueduct servitude the court concluded that pursuant to our law on servitudes the same had already been definitively established in the aforementioned manner. That is, the servient tenement is the intervener's property, and the dominant tenement is that of plaintiffs.

In view of the foregoing, the Superior Court sustained the complaint as to the motion to declare the existence of the servitudes of right of way and of aqueduct, and also as to the petition for permanent injunction in relation to the noninterruption of the aqueduct servitude. It ordered the intervener to replace the pipeline which runs across its property to the original condition in which it was when it was destroyed and also it ordered the intervener to permanently refrain itself from intervening with the use of the servitude of right of way which exists in favor of plaintiffs' tenement, and ordered it to restore to said road the gradual and safe inclination which it had prior to the intervention of defendant therein and intervener herein. The court did not make any pronouncement on the claim for damages, claim which it left pending, and for that reason, undoubtedly, it entitles its judgment "Partial Judgment."

After the aforementioned partial judgment was rendered, the intervener filed a motion for reconsideration requesting the elimination of El San Juan Hotel Corporation as code-

fendant, that the court perform an inspection of the road giving access to plaintiffs' house, and complaining that the court had ordered the replacement of the pipeline which goes across the land of El Conquistador Hotel Corporation to the original condition in which it was, that is, over the land, when—the intervener argued—it had constructed a golf course on said land. Said motion for reconsideration was set for hearing, because of reasons extraneous to the will of the parties and related only to the administrative procedure of the judicial branch of Puerto Rico (the judge who took cognizance of the case was transferred to another part) said hearing was continued by the trial court and was not decided until two years later in the manner stated hereinafter.

During the hearing of the case held, as we have said, on March 20, 1967, the intervener stipulated that as soon as it concluded the construction of the golf course it would restore the road, which constitutes the servitude of right of way, *to its original condition*. Not only did it fail to do so, but rather what intervener did was to construct a parking lot at the place along which the original road giving access to the McPherson's house ran, all this in gross violation of the stipulations. Also, by using a power shovel, it opened through another place, a dirt road, onerous and dangerous, by which it intended to give access to plaintiffs' residence.

On May 12, 1969, when two years had elapsed after rendering its judgment in this case, the respondent court entered an order in connection with the intervener's aforementioned motion for reconsideration, by which it eliminated the San Juan Hotel Corporation as codefendant, granted intervener's petition in the sense that the aqueduct servitude be installed underground and, after reiterating the correction of the findings of fact set forth in its judgment of May 15, 1967, it stated the following:

"A revision of the evidence presented, as well as the informal ocular inspection we performed, convinces us that not only was

said slope made steeper and the traffic along said road rendered more onerous, but also that, *contrary to the stipulation* made by defendant and during the time elapsed between the date when the partial judgment was rendered and the date of the inspection, said defendant constructed a parking area at the place where the road giving access passed, and altered said road in such a manner that the vehicles approaching the same from the west side along the hotel road cannot enter the same, turning immediately towards the left, but they have to go up to the hotel, turn back and approach it from the east side. We could also verify by said inspection that the land through which the road has been deviated is different from the previous one, inasmuch as the former road had a solid base, while the detour constructed is a clay road. Defendant had informed the court during the hearing which gave rise to the partial judgment *that the road would be restored to its original condition* as soon as the construction of the golf course was terminated, and it never informed that any parking area whatsoever would be constructed on the land along which the road passed. The road must be restored to its original condition." (Italics ours.)

After the term to move for review and to appeal from the partial judgment, as modified by the aforementioned order of May 12, 1969, had elapsed, the judgment became final, unappealable, and executory. Some time later plaintiffs sought, by separate motions, the execution of the judgment, and this gave rise to the holding of a hearing on August 22, 1969, for the discussion of said motions, to which hearing *only* plaintiffs appeared. At the request of the court a study was performed by a firm of engineers and specifications and drawings were prepared for the restoration of the road to its original condition.

Notwithstanding the time elapsed and the physical and mental inconveniences that plaintiffs had been suffering for over two years, the trial court decided to perform a second inspection, which took place on June 9, 1970. On said date the court changed the terms of the judgment of May 15, 1967, already final and unappealable, and authorized the

intervener to construct the road in conformity with a drawing prepared by the latter. It added that it would perform a new inspection after the work was finished and that it would only approve it if the same was adequate and convenient for the uses of plaintiffs' property. Since the damages occurred in 1966 and the complaint is dated February 1967, the result of the foregoing is that after the prejudiced persons had been litigating for three and a half years, and in spite of having already obtained a final and unappealable judgment in their favor, on June 9, 1970, they found themselves again at the foot of the arduous and onerous hill they had laboriously ascended.

Plaintiffs, petitioners herein, assign the following error: "The Superior Court, San Juan Part, incurred manifest error in refusing to order the execution of a partial, final, unappealable, and executory judgment, and in ordering compliance with the pronouncements contained in a record of inspection which are contrary to what is ordered in the aforementioned final, unappealable, and executory judgment."

On its part, the intervener states that the servitude of right of way is inconvenient and onerous for it, and that pursuant to § 481 of the Civil Code, 31 L.P.R.A. § 1673, it should be permitted that said servitude be changed to another place.

The facts in this case and the aforesaid provision of law present to us an interesting problem of the applicability of the law, but let us see, first, what said § 481 of the Civil Code exactly provides. Said section reads as follows:

"The owner of the servient tenement cannot impair, in any manner whatsoever, the use of an established servitude.

"Nevertheless, if by reason of the place originally assigned or of the manner established for the use of the servitude, it shall become too inconvenient to the owner of the servient tenement or prevent him from undertaking works, repairs, or important improvements, it may be changed at his expense, provided he offers another place or manner equally convenient, and

no detriment is thereby caused to the owner of the dominant tenement or to those who have a right to the use of the servitude."

■ Notice that what said section clearly sets forth in the first instance is that the owner of the servient tenement cannot impair in any manner whatsoever the use of the servitude. In the second instance, said provision of law establishes that when the servitude shall become *too* inconvenient—it does not merely say inconvenient, because it is always inconvenient—to the owner of the servient tenement, it may be changed at his expense, provided he offers another place equally convenient, and no detriment is thereby caused to the owner of the dominant tenement. So that in order that a change in the servitude may be successfully requested—except when there is an agreement to the contrary, of course—two of the conditions that must concur are that a place equally convenient as the original place is offered and that no detriment is caused to the owner of the dominant tenement by the change.

In this case, contrary to the letter and spirit of § 481: (1) the owner of the servient tenement impaired—destroyed—the servitude of right of way; (2) then it sought to substitute it with one considerably more inconvenient and dangerous, and (3) causing thereby prejudice to the owner of the dominant tenement. Furthermore, (4) said § 481 does not presume that it suffices that the owner of the servient tenement believes that the servitude is very inconvenient or that it deprives him of constructing important works for himself, to proceed, unilaterally, and without previous conversations and agreements with the owner of the dominant tenement, to perform the change. This would be equivalent to authorizing somebody to take justice in his own hands. The law exists to get man out of the jungle, and not to put him therein. Taking justice in one's own hands is equivalent to returning to the primitive stage in the jungle. Already, in

*Sucn. Del Moral* v. *Mayagüez L., P. & Ice Co.*, 54 P.R.R. 141, 152 (1939), precisely construing said § 481, we stated that said conditioned right recognized by law to the owner of the servient tenement cannot be used arbitrarily, nor in such a manner as to impair or destroy the right of easement. And in *Manrique* v. *Álvarez*, 58 P.R.R. 75, 79 (1941), after acknowledging that § 481 permits the change of servitude within the circumstances expressed therein, we said:

"But who shall be the judge to determine whether the change is detrimental or not to the owner of the dominant tenement? Is it by chance the owner of the servient tenement? Or the owner of the dominant tenement? Neither the one nor the other. That faculty belongs to both of them acting together, and if they could not come to an agreement, to the judicial power."

The point is clear and, of course, that is also the opinion of the commentators. IV Manresa, *Comentarios al Código Civil Español* 699, 6th ed. (1951); X Scaevola, *Código Civil* 473, 5th ed. (1947).

■ There is nothing in the foregoing contradicting the general principle that the servitude of right of way should be granted at the point less prejudicial to the servient tenement, provided it adequately serves its purpose, principle which evidently applies to the case of an enclosed tenement whose owner demands the right of way to a neighboring tenement. Sections 500 and 501 of the Civil Code, 31 L.P.R.A. §§ 1731 and 1732. We are not concerned here with the initial granting or establishing of the servitude in question, but rather that in this case there existed a servitude duly established, bilaterally and by public deed. The issue here, like in *Manrique* v. *Álvarez, supra,* is the preponderance of the law and of the indubitable subjection of the parties to the former. None of them could, unilaterally, change the servitude.

Notice that the spirit contemplated in the second paragraph of § 481 is one of reasonability, of what is fair, of what is equitable. The Civil Code contains express references to equity. Thus, for example, our § 1108 (31 L.P.R.A.

§ 3133) authorizes the judge to modify "equitably" the penalty if the principal obligation should have been partly fulfilled by the debtor. Likewise, § 1581 (31 L.P.R.A. § 4352) authorizes the partners to impugn the designation of the profits and losses when it has been made "contrary to equity."

More numerous are, however, the provisions of the Code which tacitly refer to equity. For example, § 1801 refers to "sufficient cause"; § 1077 refers to "sufficient causes"; § 1598 refers to "sufficient reason"; § 332 refers to "seriously prejudicial"; § 1056 permits the judge to mitigate the liability arising from the negligence in the fulfillment of the obligations; § 1081 authorizes the court to fix the period when an obligation should not fix it; § 1617 permits the court to judge "with more or less severity" the agent's liability; § 1210 refers to "good faith"; and §§ 1057, 1445, 1701, and 1789 refer to the diligence observed by a good father of a family.[1]

The foregoing is nothing new. No law scholar will be surprised in encountering once more the reality that what gives life to the Law—to the positive as well as to the case law—is the idea of what is just, of what is equitable. As we have pointed out before "the concepts of justice and equity are essential and cosubstantial to the notion of Law, which would fail to accomplish its moral and social purpose if it did not aspire to do justice, not an abstract and theoretical justice, but realistic and humane justice in accordance with the circumstances of each case." *García Colón* v. *Secretary of the Treasury*, 99 P.R.R. 757 (1971); *Piovanetti Doumont* v. *Martínez*, 99 P.R.R. 644 (1971); *Silva* v. *Industrial Commission*, 91 P.R.R. 865 (1965). As it is well known, whoever comes in search of equity must come with clean hands. Intervener can hardly rely on the argument that the servitude of

---

[1] The aforecited sections of the Civil Code may be found in the order in which they are cited, in 31 L.P.R.A. §§ 5127, 3052, 4398, 1277, 3020, 3064, 4449, 3375, 3021, 4052, 4774, 5102.

right of way is onerous to it, when the latter itself was the one who, knowingly, created said onerous condition, and even in clear violation of the stipulations.

■ The error assigned was committed. It must be obvious that justice in this case is on the part of plaintiffs. Their property rights and their personal tranquility were repeatedly invaded and impaired by the intervener. The former resorted to the only means permitted in our society: resort to the protection of law and of the courts. This uncertain, slow, and costly protection, after being legally obtained, cannot be dismantled except for very serious reasons, which do not concur herein. The trial court erred abusing its discretion in unjustifiedly altering a judgment rendered after a trial on the merits and which, pursuant to the rules of our positive law, has become final and unappealable.

■ In *Secretary of Labor* v. *Superior Court*, 95 P.R.R. 134, 137 (1967), we stated that it is a well-settled rule that the determinations of an appellate court constitute the law of the case in all questions considered and decided, and generally they bind the trial court *as well as the court which entered them*, if the case returns for reconsideration. It is also accepted that if the court understands that the afore-established law of the case is erroneous and that it can cause a grave injustice, the court may apply a different rule of law to settle the case fairly. In the case at bar the law of the case, which is the one contained in the judgment of May 15, 1967, as clarified or amended by the order of May 12, 1969, is neither erroneous nor does it cause grave injustice. On the contrary, in addition to being correct it restores the effectiveness of the law in this situation, effectiveness which had been impaired by the intervener's transgression.

For the reasons aforestated, the order of the Superior Court, San Juan Part, rendered in this case on February 1, 1971, will be reversed, and judgment will be rendered ordering the intervener to comply with the partial judgment

rendered in this case on May 15, 1967, as completed by its order of May 12, 1969.

Mr. Chief Justice Negrón Fernández, Mr. Justice Pérez Pimentel, and Mr. Justice Hernández Matos did not participate herein.